Elizabeth Graham FLOWERS; Frankie Dukes, Appellees,

v.

TANDY CORPORATION, Appellant,

and

William Lee Flowers; Martha Floyd Graham, Defendants.

No. 85–1064.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1985.

Decided Sept. 25, 1985.

Samuel F. Painter, Columbia, S.C. (Nexsen Pruet Jacobs & Pollard, Columbia, S.C. on brief), for appellant.

James T. McLaren, Columbia, S.C. (C. Dixon Lee, III; Draine, McLaren & Lee, P.A., Columbia, S.C., Jan L. Warner, Sumter, S.C., on brief), for appellees.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Tandy Corporation (Tandy) appeals a judgment upon a jury verdict finding Tandy liable for damages to appellees Elizabeth Flowers and Frankie Dukes as a result of Tandy's selling a telephone recording control device to William Flowers who then used it to intercept telephone conversations between the appellees. We hold that the district court erred in submitting the case to the jury on the theory that Tandy might be civilly liable for procuring or aiding and abetting illegal wiretapping under 18 U.S.C. §§ 2511 and 2520 and by instructing the jury that it could consider 18 U.S.C. § 2512, which makes criminal the sale of a device whose primary purpose is surreptitious interception of oral or wire communications, in determining whether Tandy was civilly liable under § 2520. Accordingly, we vacate the district court's judgment and remand the case to the district court.

I

The parties stipulated the following facts. On June 25, 1982, Elizabeth Flowers served a divorce complaint on her husband, William Flowers. The following day, William Flowers went to a Radio Shack store owned and operated by Tandy in Florence, South Carolina. He informed the sales clerk that he was receiving "hang up" calls, that he had a young daughter who was making long distance calls, his bill was getting out of hand and he wanted to know who was making the long distance calls. The salesman thereupon demonstrated the Archer 43–236 telephone recording control, a device which activated a tape recorder when the telephone receiver was in use and turned the recorder off when the receiver was replaced in its cradle. William Flowers returned to the store on June 28, told a second clerk of similar problems with long distance calls, received a second demonstration, and purchased the 43–236.

William Flowers then wired the 43–236 and a tape recorder to his home telephone in order to intercept calls by Elizabeth Flowers. He left the recorder in place for approximately ten days and intercepted several conversations between Elizabeth Flowers and Frankie Dukes. William Flowers' daughter eventually discovered the device and informed Elizabeth Flowers. William Flowers left the home on July 17 and filed a counterclaim in the divorce action alleging adultery, ostensibly as a result of information gleaned from the illegal wiretapping.

Elizabeth Flowers and Frankie Dukes brought this action against William Flowers, Martha Graham, who also used an Archer 43–236 to tap her husband, Charles Graham's, phone, and Tandy Corporation. The complaint alleged that the individual defendants had violated 18 U.S.C. § 2511 [1] and that 18 U.S.C. § 2520 [2] permitted a civil action for damages resulting from the illegal wiretapping. The complaint further alleged that Tandy had violated 18 U.S.C. § 2511 by procuring the wiretapping or alternatively by aiding and abetting Flowers and Graham. The plaintiffs alleged that 18 U.S.C. § 2520 also permitted recovery of civil damages for Tandy's violation of 18 U.S.C. § 2512.[3] The complaint also

---

1. 18 U.S.C. § 2511 provides in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or

(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 2520 provides:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

3. 18 U.S.C. § 2512 provides in pertinent part:

(1) Except as otherwise specifically provided in this chapter, any person who willfully—

(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

(c) places in any newspaper, magazine, handbill, or other publication any advertisement of—

(i) any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications; or

(ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications,

knowing or having reason to know that such advertisement will be sent through the mail

stated claims sounding in state tort law for invasion of privacy and infliction of emotional distress.

Before trial, judgment for $75 was entered in favor of Elizabeth Flowers and Frankie Dukes against William Flowers based upon the latter's confession of judgment in that amount.

At trial, the court directed a verdict for Tandy on the allegation that it aided and abetted Ms. Graham. No appeal is taken from that ruling. The court refused to direct a verdict for Tandy on the claim of aiding and abetting William Flowers. The court submitted that claim to the jury, instructed that conduct violative of § 2512 could be a basis for finding Tandy liable under § 2520, and instructed the jury on the state law tort of invasion of privacy. The jury returned general verdicts against Tandy in the amounts of $60,000 actual damages for both plaintiffs and $22,000 punitive damages for Elizabeth Flowers.

Tandy then moved for judgment notwithstanding the verdict and, conditionally, for a new trial. The court denied these motions. Tandy also moved to amend the judgment; it contended that the consent judgment entered in favor of appellees against Flowers served to release Tandy because Tandy's liability, if any, was joint and several. Alternatively, Tandy contended that the damage formula provided in § 2520 limited its liability to $100 a day. The court denied the motion, ruling that the confession of judgment was a covenant not to sue and therefore did not release Tandy. The court made no ruling on the alternative ground. This appeal followed.

## II

■ At the outset we hold that the district court erred in permitting the jury to consider the criminal statute, 18 U.S.C. § 2512, as a basis for imposing civil liability. The court instructed the jury in part as follows:

> or transported in interstate or foreign commerce,

Now, if a defendant does not know, or has no reason to know, that a device is primarily useful for the purpose of surreptitious interception of wire or oral communications, then that defendant has not violated the statute.

The term "primarily useful" means use which is first in rank or importance, chief, principal, basic or fundamental.

The phrase "primarily useful" for the purpose of surreptitious interception, relates to a narrow category of devices whose principal use is likely to be for that of wiretapping or eavesdropping.

Now, the question of whether a device, such as the one involved in this lawsuit, is primarily useful for surreptitious interception, is a question for you, the jury, to decide, based upon all of the facts as developed by the evidence in this case.

. . . . .

I charge you that if you find from the preponderance of the evidence, that the defendant corporation, directly or indirectly, willfully and knowingly took a hand in the wiretapping by aiding, abetting, assisting or encouraging the other defendants, particularly the defendant, Flowers, by words or by acts to wiretap, or by supplying a device, the primary useful purpose for which is to surreptitiously intercept wire or oral communications, known to have that use, then the defendant would be liable.

Looking first to the language of the statute, we find no merit in appellees' assertion that § 2520 expressly provides a private cause of action for violations of the criminal proscriptions of § 2512. Though § 2520 provides an action for any person whose communication is "intercepted, disclosed or used *in violation of this chapter*," (emphasis added), the language defining the class of persons liable is not comparably broad. The statute expressly limits those against whom the private action lies to the person who "intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such com-

> shall be fined not more than $10,000 or imprisoned not more than five years, or both.

munications." This language tracks very closely the criminal offenses set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as "manufacture," "assemble," "possess," and "sell." The express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511.

Appellees then argue that such a private cause of action may be implied from § 2512 under the statutory purpose doctrine. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We disagree.

"It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisers Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). Congress has expressly provided a criminal sanction against the wiretapper and his agents; we must be wary of reading into the statute a further private civil remedy against the seller of a device primarily useful for wire-tapping.

█ It is of course true that "provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages," *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1974). Nevertheless, implied causes of action are disfavored and should be found only where a statute clearly indicates that the plaintiff is one of a class for whose benefit the statute was enacted and there is some indication that Congress intended such a cause of action to lie. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). *See also Arvai v. First Federal Savings & Loan Association,* 539 F.Supp. 921, 924 (D.S.C.1982), *aff'd* 698 F.2d 683 (4th Cir. 1983). Congressional intent may be gleaned from the language of the statute, the legislative history, and the purpose and focus of the statute. *See Touche Ross & Co.,* 442 U.S. at 576–77, 99 S.Ct. at 2489–90.

We believe that neither criterion is satisfied in the statute in issue here. Though any criminal statute is in part enacted for the benefit of the victims of the crime, *see ·Cort,* 422 U.S. at 79–80, 95 S.Ct. at 2088–89, § 2512 appears to have been designed for benefitting the public as a whole by removing such devices from the market. Section 2511, which makes criminal the actual practice of wiretapping, is more properly aimed at protecting the particular victim, and indeed, Congress recognized that purpose by expressly providing in § 2520 a private cause of action for victims of acts made criminal in § 2511.

█ Congress clearly recognized that civil liability provides a deterrence to complement the deterrent effect of criminal penalties when it enacted the Omnibus Crime Control and Safe Streets Act of 1968. *See* S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2156. That Congress did not go further and expressly provide in § 2520 for such a·cause of action against sellers and manufacturers strongly suggests an intent not to provide such an action by implication in § 2512. "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). Therefore, we hold that § 2512 provides by implication no private cause of action against the seller or manufacturer of a device primarily useful for wiretapping.

III

█ The question remains whether, without drawing ·upon the provisions of § 2512, the private cause of action expressly provided by § 2520 reaches the conduct of Tandy as conceded seller of the device here in issue. We hold that it does not.

Section 2520 creates a cause of action against any person who "intercepts, dis-

closes, or uses, or procures any other person to intercept, disclose or use" a wire or oral communication in violation of Chapter 119 of Title 18. Tandy, through its agents, neither intercepted, disclosed, nor used a wire or oral communication. Neither can the acts of Tandy's agents sensibly be held to constitute "procuring" another person to violate the statute. "Procure" is generally understood to mean actively bringing about, causing or instigating something to be done. *See Black's Law Dictionary* 1087 (5th ed. 1979), *citing Rose v. Hunter,* 155 Cal.App.2d 319, 317 P.2d 1027, 1030. Other courts considering the issue have held that the procuring language was intended to reach the principal who enlists the aid of an agent to do the actual interception. *See, e.g., Jacobson v. Rose,* 592 F.2d 515 (9th Cir.1978) (law enforcement officials held liable for unauthorized interception telephone company made at their request); *United States v. Jones,* 542 F.2d 661, 670 n. 17 (6th Cir.1976) ("Congress intended to ensnare not only the operative conducting an illegal surveillance but the spouse who hired him as well."); *Kratz v. Kratz,* 477 F.Supp. 463, 476 n. 30 (E.D.Pa. 1979) (spouse's divorce attorney held liable when his participation included active counseling to use a wiretap to gain evidence). We do not believe the mere selling of a recording control device rises to the level of active participation that is contemplated by Congress' use of the term "procures." Therefore we cannot affirm the judgment below on the procuring theory advanced by plaintiffs.

■ Appellees' final contention is that Tandy may be held liable under § 2520 as an aider and abettor of a violation of § 2511, a theory accepted by the district court and expressly submitted to the jury. Assuming without deciding that § 2520 permits recovery on such an "aiding and abetting" theory transposed from the doctrine of criminal law, we hold that the evidence here was insufficient to submit that theory to the jury.

■ In the criminal context, a defendant may be found guilty of aiding and abetting only if he has "knowingly associated himself with and participated in the criminal venture." *United States v. Winstead,* 708 F.2d 925, 927 (4th Cir.1983). Association may be established by showing that the defendant shared in the principal's criminal intent. *Id., citing United States v. Beck,* 615 F.2d 441, 449 (7th Cir.1980). Evidence that the defendant "merely brought about the arrangement that made the criminal acts of the principals possible does not alone support a conclusion that the defendant was aware of the criminal nature of the acts." *Id.*

Still within the criminal context, whether a seller of goods that are not themselves illegal to one who intends to use them illegally shares the buyer's illegal intent has long been a close question in the law. *See* R. Perkins, *Criminal Law* 663–66 (1969). Resolution of the question has turned to a great degree on the innocuousness of the sale and the extent to which the buyer has revealed the particular use to which he plans to put the goods. *See Backun v. United States,* 112 F.2d 635 (4th Cir.1940), and cases cited therein. In the case at bar, the evidence simply falls short of establishing sufficient knowledge of the criminal intent to hold Tandy liable as an aider and abettor, assuming that the concept can be transposed from the criminal context to extend civil liability under § 2520 past "principals."

The evidence taken in the light most favorable to the plaintiffs established that Flowers indicated to Tandy's agents that he intended to record calls on his own phone. The sales representatives may have inferred that Flowers would not be a party to those calls, but that fact does not appear to have been explicitly stated to the sales people. Even had Flowers so indicated, the question remains whether he had expressed a criminal intention since the statute makes criminal willful interception without the consent of any party to the conversation. *See* 18 U.S.C. § 2511. Flowers' stated intended use of the recording control device would be within the law if

other users of his telephone consented to the use of the recorder.

Simply put, this case is not the case of an arms merchant knowingly selling a weapon to a buyer who has stated to the merchant an intention to use the weapon to kill someone. *See Backun*, 112 F.2d at 637. The evidence fails to show that Tandy's agents had any knowledge of Flowers' intended use of the device—to willfully intercept his wife's phone calls in an attempt to obtain evidence against her in a divorce action. Tandy undeniably brought about the arrangement whereby Flowers was able to carry out his illegal scheme, but that evidence is insufficient to establish that Tandy knowingly associated itself with Flowers' illegal act. *See Winstead*, 708 F.2d at 927. Therefore, we hold that the district court erred in submitting the case to the jury on an aiding and abetting theory.

## IV

■ Though the federal claims were erroneously submitted to the jury, there remains the question whether the general verdict against Tandy may nevertheless be affirmed on the basis of the state law claim for invasion of privacy, which was submitted as an alternative basis for recovery.

On this point, appellees assert that the verdict may be so upheld, relying on what they assert to be a "two-issue" rule of South Carolina's law under which general verdicts may stand if legally and factually supported by either of alternatively submitted theories. For this proposition, they cite to *Todd v. South Carolina Farm Bu-*

*reau Mutual Insurance Co.*, 283 S.C. 155, 321 S.E.2d 602 (S.C.App.1984).

Tandy does not challenge on appeal the propriety of the state claim's submission but contends that the general verdict cannot stand if the federal claims were erroneously submitted.[4] We agree with Tandy. Without regard to what state law may provide in such circumstances, a question we do not decide, federal procedural law controls on this point. Our rule is that because of the impossibility of knowing but what the jury's verdict rested on the legally erroneous theory, such a general verdict may not stand as the basis for judgment. *See Gill v. Rollins Protective Services Co.*, 722 F.2d 55, 59 (4th Cir.1983), *citing United New York and New Jersey Sandy Hook Pilots Association v. Halecki*, 358 U.S. 613, 619, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959); *see also Jones v. Miles*, 656 F.2d 103 (5th Cir.1981).

In such a situation, we must therefore vacate the judgment in appellees' favor. Because, as indicated, no challenge is made on this appeal to the district court's submission of the state law claim as an alternative basis for recovery, that claim remains on the present record a viable but unresolved one. Accordingly, we must remand for such further proceedings as are required for the state claim's disposition.[5]

VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

4. Tandy contends primarily that the judgment must be reversed, alternatively, that it must be vacated and the action remanded for disposition of the state invasion of privacy claim. The contention that the judgment must be reversed entirely is based on the argument that Flowers' confession of judgment operated as a release of all joint tortfeasors. The district court found, however, that the confession of judgment was intended to operate as a covenant not to sue rather than a release, and that finding is not clearly erroneous. The substance of the document controls over its form, *Ayers v. Pastime Amusement Co.*, 259 F.Supp. 358 (E.D.S.C.1966). A covenant not to sue one tortfeasor does not release all joint tortfeasors under South Car-

olina law. *Bartholomew v. McCartha*, 255 S.C. 489, 179 S.E.2d 912 (1971). Reversal cannot therefore be based on the defense of release of the state law claim.

5. Because the state claim is only before the court under its pendent jurisdiction, dismissal without prejudice is a possible disposition now that the federal claims have been denied on the merits. But that is a matter for district court discretion and we express no opinion on it. *See Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133, 1143–44 (4th Cir.1982); *Rheaume v. Texas Department of Public Safety*, 666 F.2d 925, 931–32 (5th Cir.1982).