**DIRECTV, INC., a California corporation, Plaintiff,**

v.

**Wyman MURRAY, Defendant.**

**No. C.A.5:03–0045–18.**

United States District Court,
D. South Carolina,
Charleston Division.

March 3, 2004.

---

James D. Brice, Greenville, SC, for plaintiff.

Christopher L. Murphy, Charleston, SC, for defendant.

## *ORDER*

NORTON, District Judge.

### *I.  Background*

Plaintiff, DirecTV, Inc. (plaintiff or "DirecTV"), brought this action on January 6, 2003, against defendant, Wyman Murray (defendant or "Murray"), alleging violations of the Federal Communications Act of 1934, 47 U.S.C. § 605(a); the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2511, 2512, and 2520; and conversion under South Carolina common law.

On July 9, 2003, defendant filed a motion for summary judgment arguing that plaintiff cannot prove that he actually intercepted its satellite signal and, therefore, has no claim against defendant under 47 U.S.C. § 605(a) or 18 U.S.C. §§ 2511 and 2520. Defendant also moved for summary judgment on plaintiff's conversion claim. On July 28, 2003, defendant filed an additional motion for summary judgment on plaintiff's claim under 18 U.S.C. § 2512 arguing that § 2512 does not provide for a private right of action.

All motions were heard by Magistrate Judge Robert S. Carr on September 10, 2003, and he issued a Report and Recommendation (the "Report") on October 3,

2003, recommending that all of defendant's motions for summary judgment be granted. On October 21, 2003, plaintiff filed objections to the magistrate judge's Report, and defendant responded on October 28, 2003. The objections are now before this court for review.

## II. Standard of review

■ This court is charged with conducting a *de novo* review of any portion of the magistrate judge's Report and Recommendation to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendation contained in that report. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). This court is not required to review under a *de novo* standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. *Id.* at 149–50, 106 S.Ct. 466. General objections will not suffice to obtain judicial review of a magistrate judge's findings. *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 508–09 (6th Cir.1991).

## III. Pertinent facts

The only factual points relevant to this review involve the circumstances under which plaintiff obtained certain business records of a company called Whiteviper Technologies ("Whiteviper"). Whiteviper was apparently a dealer in electronic devices designed to skirt encryption techniques and assist in pirating plaintiff's satellite signals. Whiteviper's business records were seized in a series of raids that took place in California prior to this litigation. Plaintiff submits that Whiteviper's records show that defendant purchased certain electronic devices whose sole purpose is to intercept plaintiff's satellite signal. Plaintiff seeks to use this evidence as its main proof that defendant violated the above-mentioned statutes. The magistrate judge concluded that these records and the statements purporting to verify their admissibility in court were inadequate; therefore, plaintiff did not have enough evidence to survive defendant's motion for summary judgment. The dominoes align as follows: the success of defendant's motion for summary judgment depends on the validity of an affidavit and declaration submitted by plaintiff (collectively referred to as the "statements"); the legitimacy of the statements turns on the admissibility of the Whiteviper records; and the admissibility of the Whiteviper records turns on Federal Rules of Evidence 803, 901, and 902.

The relevant statements came about as follows. As a result of the Whiteviper raids and the subsequent civil and criminal actions, Derek Trone ("Trone"), the records custodian for Whiteviper, made declarations regarding the seized Whiteviper records to plaintiff's attorneys for use in civil actions such as the one before this court. Trone's declaration bears the title "BUSINESS RECORDS AFFIDAVIT," and states, in pertinent part:

> I was the Custodian of Business Records for the business operated as Whiteviper Technologies on or about the time I turned over files to my attorneys which were eventually provided to DIRECTV.... It was represented to me that the information provided to me on CD Rom by the firm, Yarmuth Wilsdon, Calfo, which is attached hereto as Exhibit A is a reproduction of the information I turned over to my attorneys.

> ·   ·   ·   ·   ·

> Provided that these records contained in the attached Exhibit A are those which were turned over to DIRECTV in the form of email records: (1) each and every of these records were business

records kept in the course of the regularly conducted activity by Whiteviper Technologies; (2) the records were made in the regular course of business of Whiteviper Technologies; (3) I am among those who had possession, custody, control or access to these business records; (4) it was in the regular course of business of Whiteviper Technologies for an employee or representative of Whiteviper Technologies with personal knowledge of the acts, events, statements, conditions, or business studies, to make the aforementioned records or to transmit information thereof to be included in such business records; (5) the attached business records in Exhibit A were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (6) these business records were then transmitted to and stored and kept in the custody of Whiteviper Technologies and remain records of Whiteviper Technologies until turned over to my attorney during the above-referenced litigation; and (7) the attached records are exact duplicates of the original records.

(Trone Decl. at 1–2.) The declaration is not notarized, but states that it was executed "outside of the United States and states that under penalty of perjury under the laws of the United States of America that the foregoing is true and correct," and bears the date and Trone's signature. Furthermore, Michael Houck ("Houck"), a paralegal from Yarmuth Wilsdon Calfo PLLC, swore that he received the business records that were produced to Trone's attorneys "on a compact disk via overnight mail." (Houck Aff. at ¶ 4.) Houck also states that the two records in question in this case are "true and accurate cop[ies] of the emails on [the above-mentioned] disk." (Houck Aff. at ¶¶ 6–7.)

## IV. Analysis

As alluded to, some of plaintiff's objections to the magistrate judge's report are purely legal objections and do not require fact-specific inquiry. The court addresses these purely legal concerns first.

### A. Conversion and 18 U.S.C. § 2512

First, plaintiff did not make any specific objections to the magistrate judge's recommendation that defendant's motion for summary judgment be granted with regard to plaintiff's conversion claim; therefore, defendant's motion will be granted on that issue.

Next, plaintiff objects to the magistrate judge's recommendation to grant defendant's motion for summary judgment on plaintiff's 18 U.S.C. § 2512(1)(b) cause of action based on the magistrate judge's conclusion that this section does not provide a private right of action in the Fourth Circuit under the holding of *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir.1985). (Mag. Judge's R & R at 1 n. 1.)

DIRECTV contends that the § 2512(1)(b) claim remains viable because § 2520 of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*, creates a private cause of action for violations of the criminal statute. In arguing that a private right of action remains under § 2512, plaintiff first relies upon the fact that § 2520 (the enforcement provision of the Electronic Communications Privacy Act) was amended in 1986 and further notes that some district courts have recently determined that § 2520, as amended, confers a private right of action to sue under § 2512.

Section 2512 provides, in pertinent part:

§ 2512. Manufacture, distribution, possession, and advertising of wire, oral or electronic communication intercepting

devices prohibited. (1) Except as otherwise specifically provided in this chapter, any person who intentionally-

. . . . .

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; ... shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)(b). Section 2512 clearly provides for only criminal liability. The question is whether any other statute authorizes a private cause of action against violators of § 2512(b).

When *Flowers* was decided in 1985, § 2520 provided that:

any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person.

18 U.S.C. § 2520 (as amended Pub.L. 91–358, Title II, § 211(c), July 29, 1970). *Flowers* concluded that a private right of action to sue under § 2512 did not exist because,

Though § 2520 provides an action for any person whose communication is "intercepted, disclosed or used *in violation of this chapter*," the language defining the class of persons liable is not comparably broad. The statute expressly limits those against whom the private action lies to the person who "intercepts, discloses, or uses, or procures any other

person to intercept, disclose or use such communications." This language tracks very closely the criminal offenses set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as "manufacture," "assemble," "possess," and "sell." The express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511 .... § 2512 appears to have been designed for benefitting the public as a whole by removing such devices from the market .... Therefore, we hold that § 2512 provides by implication no private cause of action against the seller or manufacturer of a device primarily useful for wiretapping.

*Flowers*, 773 F.2d at 589 (emphasis in original).

■ As plaintiff observes, § 2520 was amended subsequent to the *Flowers* decision to read, "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity ... *which engaged in that violation* such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). This development has persuaded several district courts to conclude that a private right of action exists under § 2512. Plaintiff, of course, cites and discusses several decisions reaching this conclusion.

While plaintiff's argument has been accepted in other districts, however, it has recently been rejected by district courts within this circuit. *See DIRECTV, Inc. v. Woods et al*, No. 5:03–CV–3–BR(3) (E.D.N.C. Oct. 28, 2003) (granting defendant's motion to dismiss because "the amended § 2520 does not create a private cause of action for violations of § 2512");

*DirecTV, Inc. v. Amato,* 269 F.Supp.2d 688, 688 (E.D.Va.2003) (same). Indeed, *Amato* provides a thorough and reliable analysis on this exact issue. In that decision, the district court examined the amendments made to § 2520 and nevertheless determined they had no effect upon the ultimate conclusion of *Flowers* that no private right of action exists under § 2512(b)(1). Noting that although § 2520 has been amended three times[1] since *Flowers,* the *Amato* court observed that because § 2512(1)(b) merely relates to the *possession* of a device, as opposed to *possession and use of a device* (which is governed by § 2511), the amendments have not affected the logic of the *Flowers* decision. Rather, as stated in *Amato:*

> [T]he *Flowers* Court found that the *use* of an eavesdropping device, as outlawed by § 2511, creates a victim, thereby justifying a private cause of action, but the mere possession of such a device, as barred by § 2512, creates no individualized harm and, thus, no justification for private recovery. Stated another way, a plaintiff must allege the unlawful possession and use of eavesdropping equipment in order to maintain a cause of action under § 2511, but the mere possession of that equipment, alone, affords no civil recovery under either code section. Consequently, it is the opinion of this Court that the Fourth Circuit's holding in *Flowers,* that no private cause of action lies under § 2520 for violation of § 2512, has not been affected by subsequent statutory amendments.

*Amato,* 269 F.Supp.2d at 691.

This conclusion, of course, is correct in observing that § 2512(1)(b) (outlawing the intentional manufacture, assembly, possession or sale of pirating devices) and § 2511 (outlawing the act of interception itself) are facially different in that they regulate separate activities (i.e., mere possession vs. interception and possession by way of implication). Accordingly, this court is of the opinion that *Amato* is correct in its adherence to the current and prevailing precedent within this circuit and, as such, the court can find no reason for parting with the recent district court decisions within this circuit as plaintiff requests.

## B.   47 U.S.C. § 605 and 18 U.S.C. § 2511

■ Finally, the survival of plaintiff's final two causes of action turns on the Whiteviper records and the sufficiency of the statements made by Trone and Houck. The magistrate judge found that:

> The affidavits of Trone and Houck are insufficient to verify and authenticate [the Whiteviper records].
>
> .  .  .  .  .
>
> the affidavits explaining the [Whiteviper records] are not based on personal knowledge, but representations of others. They are inadequate. Further, the [Whiteviper records] themselves are not sworn to or certified. In short, the [Whiteviper records] do not rise to the level of evidentiary quality and alone may not be used to withstand summary judgment.

(Mag. Judge's R & R at 9 n. 2, 10.) The magistrate judge's concerns are well-justified. Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirma-

---

1.  *Amato* noted that the most significant of these amendments was that which altered the first paragraph of § 2520 to read: "Any person whose ... electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover ...." *Amato,* 269 F.Supp.2d at 690 (quoting 18 U.S.C. § 2520(a)).

tively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ P. 56(e). A close cousin of the Rule 56 affidavit is found in § 1746 of Title 28 of the United States Code, which provides, in pertinent part:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)"

28 U.S.C. § 1746. Trone's declaration was made outside of the United States and contains the significant language from § 1746.[2] Houck's affidavit is at least proper on its face; therefore, the two may be considered as before the court to rebuff defendant's motion for summary judgment if they are conforming in other respects.

Specifically, the affidavit and declaration (collectively, the "statements") must be based on personal knowledge and set forth facts that would be admissible in evidence.

While the statements are admittedly equivocal, this court finds that they are facially based on personal knowledge. Trone's statement says that he was the custodian of records at Whiteviper, that Whiteviper maintained e-mails as business records, and that Trone turned over those e-mails to his attorneys. Houck's affidavit further shows that he received the e-mail records from Trone's attorneys and then made hard copies of the electronic versions. The facts attested to in the statements are within the personal knowledge of Trone and Houck, respectively. The more complex legal question is whether the Whiteviper records are admissible as evidence.

■ Initially, plaintiff faces the burden of authentication. Rule 901 of the Federal Rules of Evidence provides, in pertinent part:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . . . .

(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

---

**2.** The Rule 902 advisory committee notes specifically state "A declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirement of Rule 902(11), as would any comparable certification under oath." Fed. R.Evid. 902 advisory committee's note (2000).

Fed.R.Evid. 901. Rule 902 excepts certain evidence from the 901 requirements, explaining:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . . .

(11) Certified domestic records of regularly conducted activity. The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record—

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

Fed.R.Evid. 902(11). Since Rule 902 refers to Rule 803 and vice versa, the issues of authentication and hearsay are necessarily intertwined in this instance.[3] Rule 803 provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6).

The question is a close one, but Trone's declaration, together with Houck's affidavit, at least in this posture, satisfy the business records exception to the hearsay rule, and simultaneously solve plaintiff's authentication problem. Trone's declaration satisfies Rule 803(6) and rule 902(11) by stating that the e-mail records were kept in the normal course of Whiteviper's business and created at or near the time of the matters set forth. In other words, Trone acknowledges that Whiteviper regularly received orders by e-mail and systematically retained the e-mails as a record of the order. Trone would clearly be able to come into court and testify as to those facts were he available to do so. However, since the e-mail records changed hands, Trone hinged his declaration regarding the specific record in this case on

---

**3.** Rule 902(11) was designed to work in tandem with an amendment to Rule 803(6) to allow proponents of business records to qualify them for admittance with an affidavit or similar written statement rather than the live testimony of a qualified witness. The changes were recently adopted together in a 2001 amendment. *See* Fed.R.Evid. 803(6) advisory committee's note (2000), Fed.R.Evid. 902 advisory committee's note (2000).

an assurance from Houck that the record came from the collection that Trone turned over to Houck. Houck's affidavit satisfies that condition. Essentially, Trone was the custodian of the records when they were created and when they were maintained by Whiteviper, but once he turned them over, Trone ceased to have personal knowledge of the integrity of the records. Houck's affidavit is evidence of the integrity.[4]

■■ This court notes, in caution, that Rule 56(e)

> does not require an unequivocal ruling that the evidence suggested in [a] particular affidavit would be admissible at the trial as a condition precedent to holding the affidavit raises a genuine issue. In many cases, it is possible to say without qualification that evidence recited in an affidavit under Rule 56(e) would or would not be admissible; but it is not so here. Admissibility of testimony sometimes depends upon the form in which it is offered, the background which is laid for it, and perhaps on other factors as well.

*Corley v. Life & Cas. Ins. Co.*, 296 F.2d 449, 450 (D.C.Cir.1961). Trone's declaration and Houck's affidavit raise a genuine issue of material fact by referring to evidence that could be admissible and could lead a reasonable jury to find for plaintiff as the non-moving party. Evidence that defendant purchased electronic devices which are only useful for pirating plaintiff's satellite signal, together with evidence that defendant had all of the other means necessary to pirate plaintiff's signal, is circumstantial evidence that defendant actually pirated plaintiff's signal. Because 47 U.S.C. § 605 and 18 U.S.C. § 2511 do allow for private causes of action when a party's signal has been stolen,[5] plaintiff has shown that there is a genuine issue of material fact as to whether defendant violated these statutes.

### V. Conclusion

It is therefore, **ORDERED**, for the foregoing reasons, that defendant's motion for summary judgment as to plaintiff's claims for conversion and under 18 U.S.C. § 2512 is **GRANTED**, and defendant's motion for summary judgment as to plaintiff's claims under 47 U.S.C. § 605 and 18 U.S.C. § 2511 is **DENIED**.

**AND IT IS SO ORDERED.**

---

4. It is clear that Rule 902(11) requires proper notice for a reason. The advisory committee notes state that "The notice requirement in Rules 902(11) and (12) is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed.R.Evid. 902 advisory committee's note (2000). In other words, the burden is put on the opponent of the evidence, given enough time to do so, to show that the foundation provided by the affiant or declarant is so weak as to fail to meet the minimal standards of authenticity established by Article 9 of the Federal Rules. As the record stands, defendant has not met that burden.

5. *See DirecTV v. Cabading,* No. 2:02–3194–18, slip op. at 3–6 (D.S.C. filed Oct. 29, 2003) (discussing the existence of a private right of action under 18 U.S.C. § 2511); *see generally, Flowers,* 773 F.2d 585.