[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-15313

_____

D. C. Docket No. 03-00428-CV-FTM-29

DIRECTV, INC.,
a California corporation,

Plaintiff-Appellant,

versus

MIKE TREWORGY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 15, 2004)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

The issue presented by this interlocutory appeal has produced disagreement

among the district courts both in this circuit and elsewhere: whether 18 U.S.C.

section 2520(a), as amended in 1986, provides a private right of action against persons who possess devices used to intercept satellite transmissions in violation of 18 U.S.C. section 2512(1)(b), a criminal offense. This Court is the first court of appeals to address this issue. DIRECTV, Inc. (DTV) argues that it has a private right of action against Mike Treworgy for his alleged possession of these illegal devices. The district court, however, granted Treworgy's motion to dismiss that count of the complaint. Because we find that the plain language of section 2520(a) does not create a private right of action against a person who possesses a device in violation of section 2512(1)(b), we affirm the district court and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

DTV provides satellite television programming to millions of subscribers. DTV encrypts its satellite transmissions to prevent the unauthorized viewing of pay-per-view and premium programs. The customers of DTV purchase access devices from DTV to decrypt the satellite transmissions.

Some individuals illegally circumvent these security measures and intercept the satellite transmissions without paying any fees to DTV. Often these individuals are aided by companies that market "pirate access devices," which allow users to decrypt the satellite transmissions of DTV. The intentional

2

manufacture, distribution, possession, and advertising of pirate access devices is a criminal offense. 18 U.S.C. § 2512.

DTV obtained from Fulfillment Plus, a California-based mailing facility, records that showed that Treworgy purchased two pirate access devices, a "PT2 Pocket Pal Programmer" and a "PT2 Pocket Pal Upgrade Chip," from a company that shipped those devices to him through Fulfillment Plus. DTV then sued Treworgy in the district court and alleged that Treworgy possessed and used these pirate access devices in violation of sections 2512(1)(b) and 2511(1), respectively. DTV alleged that section 2520(a), as amended by the Electronic Communications Privacy Act of 1986 (Wiretap Act), created a private right of action against a person in possession of access devices in violation of section 2512(1)(b). Treworgy moved to dismiss that count of the complaint on the ground that section 2520(a) does not create a private right of action against persons in possession of pirate access devices.

The district court granted Treworgy's partial motion to dismiss. The parties then moved jointly for certification of this interlocutory appeal, under 28 U.S.C. section 1292(b). The district court granted that motion, and we accepted this interlocutory appeal. We are now presented with the question whether section 2520(a) provides a private right of action against a person who possesses pirate

3

access devices in violation of section 2512(1)(b).

This question has produced divergent rulings. Several district courts have held that section 2520(a) creates a private right of action for the violation of section 2512(1)(b). See, e.g., DirecTV, Inc. v. Drury, 282 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2003); DirecTV, Inc. v. Karpinsky, 274 F. Supp. 2d 918, 919 (E.D. Mich. 2003); DIRECTV, Inc. v. Dougherty, No. 02-5576, 2003 U.S. Dist. LEXIS 23654, at *5-*7 (D.N.J. Oct. 8, 2003); DirecTV, Inc. v. Gatsiolis, No. 03 C 3534, 2003 U.S. Dist. LEXIS 15801, at *5-*6 (N.D. Ill. Aug. 27, 2003); DirecTV, Inc. v. Megar, No. 03-20247-CIV-MARTINEZ, 2003 U.S. Dist. LEXIS 23814, at *2 (S.D. Fla. July 2, 2003). Several other district courts, in addition to the court that entered the order that is the subject of this appeal, have reached the opposite conclusion. See, e.g., DirecTV v. Lorenzen, 299 F. Supp. 2d 789, 792-93 (N.D. Ohio 2004); DirecTV, Inc. v. Gemmell, ___ F. Supp. 2d ___, No. CIV.A.6:03-944, 2004 WL 1048236, at *5 (W.D. La. Apr. 30, 2004); DIRECTV, Inc. v. Cope, 301 F. Supp. 2d 1303, 1305 (M.D. Ala. 2003). DTV represented in its brief that it has approximately 1800 pending complaints in the district courts of Florida in which DTV has alleged that a defendant has violated section 2512. That large number does not include the hundreds more complaints of DTV that are pending in the other district courts within the Eleventh Circuit.

## II. STANDARD OF REVIEW

The question before us is purely a matter of statutory interpretation, which we review de novo. United States v. Veal, 153 F.3d 1233, 1245 (11th Cir. 1998), cert. denied, 526 U.S. 1147, 119 S. Ct. 2024 (1999).

## III. DISCUSSION

This is the second appeal this year in which we have had to construe the language of the Wiretap Act in a case filed by DTV. DIRECTV, Inc. v. Brown, ___ F.3d ____, No. 03-16094, 2004 WL 1178469 (11th Cir. May 28, 2004). As in the other appeal, "[w]e begin our construction of [the Wiretap Act] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). Section 2520(a) creates the following civil remedy:

> (a) In General. – Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a) (emphasis added).

The possession of a pirate access device is defined separately as a criminal offense in section 2512(1)(b):

5

(1) Except as otherwise specifically provided in this chapter, any person who intentionally –

...

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; ...

shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)(b).

The plain language of these provisions addresses two distinct concerns. Section 2520(a) provides a civil remedy for the victim of the theft of an electronic communication. Section 2512(1)(b) provides a criminal punishment for those involved in trafficking devices used for the theft of electronic communications without need of proof that any person has yet been injured by that illegal commerce.

Because it creates a civil remedy, section 2520(a) properly defines both the victims for whose benefit the remedy exists and the offenders for whom liability is owed. The plaintiff is "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). The defendant is "the person or entity which engaged in that violation." Id.

6

The phrase "which engaged in that violation" makes apparent the intent of Congress to limit liability to a certain class of defendants. 18 U.S.C. § 2520(a) (emphasis added). Congress chose to confine private civil actions to defendants who had "intercepted, disclosed, or intentionally used [a communication] in violation of ... chapter [119 of title 18.]" Id. As explained by one district court, "as a matter of grammar and sentence structure, the phrase 'that violation' refers to the interception, disclosure, or intentional use of communications mentioned earlier in the sentence, and not to the possession of prohibited devices." DIRECTV, Inc. v. Bertram, 296 F. Supp. 2d 1021, 1024 (D. Minn. 2003) (emphasis added).

DTV proposes a tortured reading of section 2520(a). DTV argues that, under section 2520(a), a plaintiff can sue for any act "in violation of" the Wiretap Act if the plaintiff pleads that its communications have been intercepted, disclosed, or intentionally used. DTV argues that the interception of its communications gives it "standing" to sue under section 2520(a), but DTV then argues that it is irrelevant whether the defendant committed an interception that gave rise to the plaintiff's standing to sue. DTV would have us read the language "that violation" to mean any violation of the Wiretap Act, not only the interceptions, disclosures, or intentional uses that define the plaintiff's right of action.

7

This construction is also constitutionally problematic. As the Electronic Frontier Foundation, an amicus curiae, argues, it is difficult to understand how DTV could establish a "case" or "controversy," within the meaning of section 2 of Article III of the Constitution, which defines and limits the judicial power of federal courts, without an allegation that the wrongdoer against whom DTV seeks relief actually injured or directly threatened to injure DTV. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). Possession of a pirate access device alone, although a criminal offense, creates nothing more than conjectural or hypothetical harm to DTV. DirectTV v. Amato, 269 F. Supp. 2d 688, 691 (E.D. Va. 2003). By adhering to the plain language of section 2520(a), we avoid, as we must, however, the constitutional problems that might arise in the construction of this statute. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 787, 120 S. Ct. 1858, 1870 (2000).

DTV also erroneously argues that, because Congress expressly excluded violations of section 2511(2)(a)(ii) as a basis of civil liability, any other violation of the Wiretap Act gives rise to civil liability. The language of section 2511(2)(a)(ii), however, buttresses the conclusion that the liability created by section 2520(a) is confined to illegal interceptions, disclosures, and uses of electronic communications. Section 2511(2)(a)(ii) exempts from civil liability any

8

person or agency that assists law enforcement officers in wiretap activity under a lawful order. In other words, section 2511(2)(a)(ii) provides that a narrow category of interceptions, disclosures, and uses of the electronic communications of others is lawful, and section 2520(a) then makes clear that it does not create any civil liability for persons involved in the lawful activity defined in section 2511(2)(a)(ii).

Our reading of section 2520(a) is also consistent with the language of its earlier version, which read as follows:

> Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications... .

18 U.S.C. § 2520 (1985), amended by Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, § 103, 100 Stat. 1848, 1853-54 (1986). In Flowers v. Tandy Corp., 773 F.2d 585 (4th Cir. 1985), the Fourth Circuit held that this earlier version of section 2520 did not create a private right of action for violations of section 2512. The Flowers court so held in the context of a verdict won by an ex-wife against the corporation that sold a wiretapping device to her former husband.

In explaining that a private right of action did not exist under the old version of section 2520, the Flowers court reasoned as follows:

9

Though § 2520 provides an action for any person whose communication is "intercepted, disclosed or used <u>in violation of this chapter</u>," ... the language defining the class of persons liable is not comparably broad. The statute expressly limits those against whom the private action lies to the person who "intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications." This language tracks very closely the criminal offenses set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as "manufacture," "assemble," "possess," and "sell." The express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511.

<u>Flowers</u>, 773 F.2d at 588-89.

DTV wrongly contends that the change in the language of section 2520 somehow expanded what the <u>Flowers</u> court called "the class of persons liable." <u>Id</u>. at 588. The 1986 amendments streamlined the language of the statute, constricted the class of persons liable, and brought electronic communications within the coverage of the statute. Congress replaced its earlier, more verbose version with the simpler wording, "the person or entity ... which engaged in that violation." <u>See</u> <u>DIRECTV, Inc. v. Baker</u>, ___ F. Supp. 2d ___, No. 3:03cv1085-T, 2004 WL 1109879, at *5 (M.D. Ala. May 19, 2004) ("[L]egislative history provides no indication that the change was meant to expand the class of violations that can form the basis of a civil suit."); <u>DIRECTV, Inc. v. Boggess</u>, 300 F. Supp. 2d 444, 448 (S.D.W. Va. 2004) ("[I]t appears that Congress substituted the language

10

'engaged in that violation' for the more descriptive language contained in the superseded version without intending to change the potential class of defendants."). Congress also removed from the class of persons liable those who procured an interception, disclosure, or use of protected communications. Finally, Congress amended section 2520 to cover the interception, disclosure, or intentional use of electronic communications in addition to the wire or oral communications that were already protected from theft.

DTV urges that the existence of a private right of action for violations of section 2512(1)(b) would better effectuate the purpose of the Wiretap Act. DTV argues that the availability of this private right of action would encourage private attorneys general to aid in the enforcement of federal law. The fundamental problem with this argument, however, is that "courts may not create [a private right of action], no matter how desirable that might be as a policy matter, or how compatible with the statute," because that is a determination Congress alone can make. Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 1520 (2001). Because the language of section 2520(a) does not create a private right of action against a person who possesses a device in violation of section 2512(1)(b), we cannot create one.

### III. CONCLUSION

11

The district court correctly ruled that, in amending section 2520 of the Wiretap Act in 1986, Congress did not create a private right of action against persons in possession of access devices in violation of section 2512(1)(b). Accordingly, the judgment of the district court is **AFFIRMED** and this case is **REMANDED** to the district court for further proceedings consistent with this opinion.