Sumner Lipman, Roger Katz, Augusta, Me., for defendant.

## UNITED STATES of America

v.

## Elery L. BEALE, Sr., Defendant.

### Crim. No. 87–00055–B.

United States District Court,
D. Maine.

March 2, 1988.

## MEMORANDUM OPINION

CYR, Chief Judge.

Defendant, who is charged with a criminal violation of title 47, United States Code, subsection 553(a), requests a jury instruction that mere distribution of equipment intended for unauthorized use in intercepting or receiving a communications service offered over a cable system does not constitute a violation of the statute, absent proof of an *actual* interception or reception.

## DISCUSSION

■ Congress enacted section 553 in 1984.

Sec. 553. Unauthorized reception of cable service

(a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a

cable system in violation of subparagraph (1).

47 U.S.C. section 553(a) (Supp. III 1985).

The defendant argues that *actual* reception or interception of a cable communications service is an essential element of the crime charged under this statute. The gist of the argument is that one cannot assist in intercepting or receiving a cable communications service unless there is an actual interception. However, the language of section 553, its legislative history, the limited case law interpreting section 553, and similar precursor statutes, all lead to the conclusion that proof of *actual* interception or reception is unnecessary, provided there has been proof of willful manufacture or distribution of equipment intended for unauthorized use in the interception or reception of a cable communications service.

The statute makes it a criminal offense "to assist in intercepting or receiving" cable communications. 47 U.S.C. section 553(a)(1) (Supp. III 1987). "[T]he term 'assist in intercepting or receiving' ... include[s] the ... distribution of equipment intended by the ... distributor ... for unauthorized reception...." 47 U.S.C. section 553(a)(2) (Supp. III 1987). Thus, defendant's argument is belied by subparagraph 553(a)(2), which explicitly states that a defendant "assist[s] in intercepting or receiving" a communications service by distributing "equipment *intended* by the ... distributor ... for unauthorized reception of any communications service...." 47 U.S.C. section 553(a)(2) (Supp. III 1987) (*emphasis added*). In other words, a willful distribution of equipment *intended for the unauthorized* interception or reception of any communications service offered over a cable system is, by statutory definition, a violation of this statute.

Congress enacted section 553 because "theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it." H.R.Rep. No. 98–934, 98th Cong., 2d Sess. 83, *re-printed in* U.S.Code Cong. & Admin.News 1984, 4655, 4720. Subparagraph (a)(2) of section 553 is "primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service." *Id.* at 4721. If "a distributor *intends* that equipment he distributes ... be used for interception or reception of services provided over a cable system, such person would be liable for assisting such activities." *Id.* at 4720–21 (*emphasis added*). By providing "the equipment with the intent or specific knowledge that it will be used for the unauthorized reception of cable service," distributors come within the terms of the act. *Id.* at 4721.

The only cases to consider whether *actual* interception is required under subsection 553(a) are *United States v. Losey,* No. 685–97 (W.D.Mi.1985) (unpublished ruling on motion for judgment of acquittal), and *Storer Communications, Inc. v. Mogel,* 625 F.Supp. 1194 (S.D.Fla.1985). After a careful consideration of the legislative history and of the treatment given by other courts to similar statutes, the *Storer* court concluded that "defendants' defense that only the use of such equipment is illegal, rather than its sale or distribution, is totally without merit." *Id.* at 1200.

*Section 605*

Prior to the enactment of section 553, section 605 of title 47, United States Code, which prohibits unauthorized publication or use of wire or radio communications, was applied to thefts of subscription television services. Subsection 605(a), which remains in effect, provides:

Sec. 605 UNAUTHORIZED PUBLICATION OR USE OF COMMUNICATIONS

(a) Practices prohibited

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to

any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. *No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication* (or any information therein contained) *for his own benefit or for the benefit of another not entitled thereto.* No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. section 605(a) (1982 & Supp. III 1985) (*emphasis added*).

Section 605, which had its genesis in the Radio Act of 1912, originally was designed to protect the confidentiality of radio communications, but later evolved into a statutory vehicle for the protection of subscription television services. *See Home Box Office, Inc. v. Advanced Consumer Technology, Movie Antenna, Inc.,* 549 F.Supp. 14, 17–21 (S.D.N.Y.1981) (detailed legislative history of section 605).

Interestingly, section 605 does not contain any language directly or explicitly relating to the manufacture or distribution of intercept equipment. Yet the courts have had little difficulty determining that section 605 covers equipment distributors, including distributors of subscription television decoders, *see ON/TV of Chicago v. Julien,* 763 F.2d 839, 843–44 (7th Cir.1985); *National Subscription Television v. S & H TV,* 644 F.2d 820, 826–27 (9th Cir.1981); *Chartwell Communications Group v. Westbrook,* 637 F.2d 459, 466 (6th Cir. 1980); *Subscription Television of Greater Washington v. Kaufmann,* 606 F.Supp. 1540, 1544–45 (D.D.C.1985); *Cox Cable Cleveland Area, Inc. v. King,* 582 F.Supp. 376, 379 (N.D.Ohio, 1983); *Home Box Office, Inc.,* 549 F.Supp. at 25, through recourse to the statutory language: "assist in receiving," *see* 47 U.S.C. section 605(a) (1982 & Supp III 1985).

The issue of whether an actual interception must be shown under section 605 has been addressed in a closely analogous context. In *Chartwell Communications,* defendants argued that, since all television sets received the subscription television signals, the defendants' decoder equipment did not "assist in receiving" subscription television signals, but merely descrambled those signals. The court summarily dismissed the argument. 637 F.2d at 466. *See also National Subscription Television,* 644 F.2d at 826.

Most reported decisions under section 605 and section 553 have arisen in civil cases. In *ON/TV of Chicago,* 763 F.2d at 843–44, the court held that the defendant's intent "to violate section 605 by actively encouraging the unauthorized interception of ... signals" did not need to be established in a civil case. *United States v. Westbrook,* 502 F.Supp. 588, 592–93 (E.D. Mich.1980), was "the first criminal prosecution in the country for the unauthorized manufacture or sale of subscription tele-

vision decoders." Nevertheless, as the *Westbrook* court stated:

> Defendants [have] suggested that the conduct alleged in the information here should not be subject to a criminal penalty for the reason that, although it may amount to interference with the business relations of subscription television broadcasters, it is not activity that ought to result in criminal fine or imprisonment. This Court, however, cannot construe the language of the statute in one fashion for civil actions and in another fashion for criminal prosecutions, and as the foregoing opinion indicates, I have concluded that Defendants' conduct violates the provisions of Section 605. This having been determined, the criminal liability of Defendants turns not on a different interpretation of the language of Section 605 for a criminal case but on the factual question of whether Defendants' acts were "willful and knowing" as required by Section 501.

*Id.* at 593.

The court concludes that the explicit statutory definition of "assist in intercepting or receiving," as including "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system ...," 47 U.S.C. section 553(a)(2), makes it clear that defendant's requested jury instruction is contrary to law. Accordingly, the requested jury instruction is denied.

SO ORDERED.