**DIRECTV, INC., Plaintiff,**

v.

**Randall TASCHE, Defendant.**

**No. 03–C–1318.**

United States District Court,
E.D. Wisconsin.

May 4, 2004.

---

James A. Friedman, Steven A. Heinzen, LaFollette Godfrey & Kahn, Madison, WI, for Plaintiff.

Remzy D. Bitar, Crivello Carlson & Mentkowski SC, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

GRIESBACH, District Judge.

DirecTV filed a six-count Complaint against the defendant Randall Tasche, alleging violations of the Federal Communications Act, the Digital Millennium Copyright Act, and federal wiretap laws. Presently before me is the defendant's Rule 12(b)(6) motion to dismiss the second and sixth claims of the complaint on the ground that the plaintiff lacks the requisite standing to bring them based on the two criminal statutes upon which they are predicated. For the reasons stated herein, I conclude that the defendant's motion should be denied.

## FACTUAL ALLEGATIONS

According to the allegations of the complaint, which are accepted as true for purposes of deciding the motion before me, *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990), DirecTV is the nation's leading direct satellite broadcast system, delivering approximately 225 channels of entertainment, informational and other programming to its approximately 11 million subscribers. (Complt. ¶ 2.) Using equipment developed by News Datacom Limited, NDS Americas, Inc., and NDS Limited ("NDS"), DirecTV electronically encrypts, or scrambles, its satellite transmissions to provide security for and prevent the unauthorized viewing of in television programming. (*Id.* ¶ 3.) The equipment developed by NDS includes Access Cards which, upon activation by DirecTV, decrypts or descrambles DirecTV television programming so that it can be viewed by DirecTV subscribers. Each Access Card, which is provided to subscribers as a component of the digital satellite equipment, has an embedded microprocessor that controls the decryption process and other functions. (*Id.*)

On or about December 1, 2001, DirecTV, with the assistance of the United States Marshals Service, executed Writs of Seizure upon The Computer Shanty, an Internet seller of devices primarily designed for the unauthorized interception of DirecTV's Satellite Programming ("Pirate Access Devices"). (*Id.* ¶ 24.) As a result of its analysis of various business records that were seized from The Computer Shanty, DirecTV learned that defendant Randall L. Tasche purchased approximately 20 signal theft devices from The Computer Shanty beginning on or about January 24, 2001, and continuing until at least November 19, 2001. DirecTV alleges that Tasche purchased and then resold the devices in interstate commerce. (*Id.* ¶ 26.)

DirecTV alleges that Tasche knowingly and willfully combined and conspired with others to defraud DirecTV of its rights, properties and revenues. (*Id.* ¶ 25.) More specifically, DirecTV claims that Tasche engaged in repeated illegal and improper acts, practices and schemes which were intended, *inter alia,* (a) to assist, aid and abet the illegal and unauthorized reception and decryption of DirecTV's satellite transmissions of television programming by persons not authorized to receive such programming; (b) to defraud DirecTV of subscription and pay-per-view revenues and other valuable consideration by manufacturing, distributing, and selling illegal devices intended to facilitate the reception and decryption of DirecTV's satellite television programming without authorization by or payment to DirecTV; and (c) to defraud DirecTV of revenues and other valuable consideration by manufacturing, distributing and selling illegal devices intended to illegally modify DirecTV Access Cards. (*Id.* ¶ 23.)

Based upon these allegations, DirecTV has asserted six separate claims arising under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201–1205; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510–2521. Defendant's motion challenges two of the six claims DirecTV has asserted.

## ANALYSIS

### 1. Standing under 47 U.S.C. § 605(e)(4).

■ In the second claim of its complaint, DirecTV has alleged a civil cause of action against Tasche for violation of 47 U.S.C. § 605(e)(4). Section 605, however, is a criminal statute. By itself, a criminal statute generally does not give rise to a private right of action. *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Ragsdale v. Turnock,* 941 F.2d 501, 509 (7th Cir.1991). But subsection (e)(3)(A) of § 605 clearly evinces Congress's intent to create a private right of action for persons aggrieved by at least certain violations of the Federal Communications Act. The question here is whether the statute created a private right of action on behalf of providers of direct-to-home satellite services for violations of § 605(e)(4).

DirecTV has brought two causes of action against Tasche for violations of § 605. The first alleges a violation of § 605(a), which prohibits any person from assisting the unauthorized reception and use of encrypted satellite transmissions. The second alleges a violation of § 605(e)(4), which provides:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, direct-to-home satellite services, or is intended for any other activity prohibited by subsection

(a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

Congress clearly intended to allow civil suits to redress violations of both provisions of § 605. Section 605(e)(3)(A) states:

Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

But in order to bring such an action, the plaintiff must be a "person aggrieved." The phrase "person aggrieved" is specifically defined by the statute. Section 605(d)(6) states:

the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and in the case of a violation of paragraph (4) of subsection (e) of this section shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

It is on this definition that Tasche's motion to dismiss DirecTV's second claim is based. Tasche concedes that for purposes of claim I, which alleges a violation of § 605(a), DirecTV, as a person with proprietary rights in the intercepted communication, is a person aggrieved within the meaning of § 605(d)(6) and therefore has standing to assert such a claim. But DirecTV does not have standing, Tasche contends, as to its claim that he manufactured, assembled, modified, imported, ex-

ported, distributed or sold an illegal device set forth in claim II.

There are two premises to Tasche's argument. First, because DirecTV is suing under subsection (e)(4), civil standing to sue can only be founded on the second half of the above definition, i.e., that part which follows "in the case of a violation of paragraph (4) . . ." Second, because DirecTV is not engaged in the business of "satellite cable programming," it is therefore outside the purview of the second part the definition of "any person aggrieved". *Id.* Thus, Tasche argues, because DirecTV does not qualify as a "person aggrieved," it cannot have standing to sue under § (e)(4).

I will address the second premise to Tasche's argument first. Tasche focuses on the definition of "satellite cable programming," which the statute defines as programming "primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers." 47 U.S.C. § 605(d)(1). Tasche argues that DirecTV (as its name implies) sends programming *directly* to the consumer rather than to cable operators who subsequently re-transmit it to their subscribers. According to the complaint, DirecTV is a "direct broadcast satellite system" and "delivers hundreds of channels of digital entertainment and informational programming to homes and businesses". (Compl. ¶¶ 2, 12.) Thus, it is clear that its business activities fall outside the scope of "satellite cable programming" for purposes of § 605 and are more properly categorized as direct-to-home satellite services. *See* 47 U.S.C. § 605(e)(4).

The first premise to Tasche's argument, however, is more problematic. In Tasche's view, because DirecTV does not qualify within the second half of the definition of a "person aggrieved," it cannot bring a civil suit under (e)(4). DirecTV, on the other hand, rejects the notion that

§ (d)(6) should be bifurcated and argues that standing under 605(a) (the first part of § (d)(6)) is sufficient to confer standing to sue under § (e)(4)(the second half of the definition). DirecTV relies on the fact that the definition uses the terms "includes" and "shall also include". Repetition of the definition may prove useful at this juncture:

the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e) of this section shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

47 U.S.C. § 605(d)(6).

■ As discussed earlier, Tasche has conceded that the plaintiff has standing under § 605(a) as a person "with proprietary rights in the intercepted communication". He argues, however, that in order for DirecTV to assert a claim under § 605(e)(4), it must qualify as an aggrieved person under the second half of the definition. This is where Tashe's argument stumbles.

Literally read, the expansive language of the statute simply does not support Tasche's construction. The "shall also include" language appears to extend civil standing such that a person aggrieved under the first part of the definition would also have standing to bring a claim based on the second part of the definition. That is, merely by virtue of having proprietary rights in a specific intercepted communication (under § 605(a)), a plaintiff would also have standing to sue any person who manufactured, exported, modified, etc., decryption equipment in violation of (e)(4) that was designed and used to unlawfully de-

crypt the plaintiff's communications. This is what the plain meaning of the statute appears to allow.

Tasche offers no policy reason why the literal terms of the statute should be ignored and the more narrow construction he advances applied. It makes little sense for Congress to authorize civil lawsuits by direct satellite broadcasters against persons who steal their programming, but deny standing for them to bring similar lawsuits against those involved in the manufacture and distribution of the illegal devices that make possible the theft in the first place. Indeed, such a construction would be contrary to clear legislative history relating to the 1988 amendment to the Federal Communications Act which added the § 605(d)(6) definition of "any person aggrieved." The House Report accompanying the 1988 amendment states explicitly that the amendment was intended to deter piracy practices by "expanding standing to sue . . . ." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 912 (6th Cir. 2001) (citing H.R.Rep. No. 100–877(II), at 28, *reprinted in* 1988 U.S.C.C.A.N. 5638, 5657).

Based upon this history and the language of the statute, I conclude that Congress intended to confer standing on providers of direct-to-home satellite programming to bring civil actions for violations of § 605(e)(4). I therefore conclude that Tasche's motion to dismiss DirecTV's second claim should be denied.

**2. Standing under 18 U.S.C. § 2512.**

Tasche also argues that DirecTV lacks standing to bring a civil suit under 18 U.S.C. § 2512(1)(b), which is the basis of DirecTV's sixth claim. Section 2512(1)(b), like 47 U.S.C. § 605(e)(4), also provides for criminal liability if a person intentionally "manufactures, assembles, possesses, or sells any . . . device, knowing or having

reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications . . ." Also like 47 U.S.C. § 605(e)(4), § 2512 is a criminal statute. But by virtue of § 2520, DirecTV argues, it has standing to bring a civil action for a violation of § 2512. Section 2520(a) provides that "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . engaged in that violation". Under DirecTV's theory, § 2520 allows for civil liability for any violations of that chapter.

Tasche disputes DirecTV's interpretation of § 2520(a). He notes that this subsection authorizes "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" to bring a civil action to recover "from the person or entity which engaged in that violation." In Tasche's view, this language limits the persons against whom DirecTV can bring a civil action to only those who directly intercept, disclose, or intentionally use its wire, oral or electronic communication. DirecTV's fifth claim against Tasche does allege that he intentionally intercepted its satellite transmissions in violation of § 2511(1)(a), and Tasche does not challenge DirecTV's standing as to this claim. But its sixth claim alleges only that Tasche "has engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices" in violation of § 2512(1)(b). (Compl. ¶ 55.) Because making, possessing or selling such devices, by itself, does not amount to intercepting its satellite transmissions, Tasche argues that DirecTV has no standing to bring a civil action for a violation of § 2512(1)(b).

There is significant support for Tasche's interpretation. At least fourteen district courts have found that "actions based on violations of § 2512(1)(b) fall outside of the scope of § 2520(a)." *DirecTV, Inc. v. Bertram,* 296 F.Supp.2d 1021, 1025 (D.Minn.2003). A substantial number of courts, however, including several in this circuit, have rejected this interpretation. Judge Shadur, for example, recently found a distinct "lack of merit" in the argument and noted that "[b]ecause both Section 2520 and Section 2512 are part of Chapter 119 of Title 18, the plain language of Section 2520(a) directly refutes" the contention that civil liability may not stem from § 2512. *DirecTV, Inc. v. Dyrhaug,* 2004 WL 626822, *1 (N.D.Ill.2004). This reading of the statute has become what one court recently dubbed a "newly-developed majority view" on the issue. *DIRECTV, Inc. v. Kitzmiller,* 2004 WL 692230, *4 (E.D.Pa.2004). Specifically, the approach taken by these courts reads § 2520 as both a standing requirement and as an identification of potential defendants. *DirecTV, Inc. v. Perez,* 279 F.Supp.2d 962, 964 (N.D.Ill.2003)(Section 2520 "establishes a standing requirement to initiate suit and identifies the appropriate defendants.") A plaintiff meets the standing requirement if its communication has been "intercepted, disclosed, or intentionally used in violation of this chapter". 18 U.S.C. § 2520(a). If it has standing, a plaintiff may bring a civil suit against any defendant who engaged in "that violation," a term that courts adopting this reading interpret as a reference to a "violation of this chapter." For example, Judge Aspen very recently dealt with the same issue, finding that:

We interpret the language of the statute as permitting those whose communication has been "intercepted, disclosed, or intentionally used" to bring a suit, rather than as limiting the class of potential defendants. The second clause provides

the category of defendants from whom the plaintiff may recover: those who "engaged in that violation." 18 U.S.C. § 2520(a). The phrase "that violation" refers to a violation of the chapter. Because § 2512 lies within the covered chapter, we interpret § 2520(a) as authorizing the recovery of civil damages for a defendant's violation of § 2512. Thus, DirecTV may bring an action against Dillon for intentionally possessing an illegal access device, one of the prohibited acts listed in § 2512(1)(b).

*DirecTV, Inc. v. Dillon,* 2004 WL 906104, *2 (N.D.Ill.2004) (citations omitted). Judge Aspen noted that several courts have interpreted "that violation" to refer back to the act of intercepting, disclosing or intentionally using a communication, but he rejected that approach because that language only served to grant standing to a class of plaintiffs rather than to identify potential defendants. *Id.* at *2, n. 2. Similarly, Judge Coar, also in the Northern District of Illinois, found that "[i]f the plaintiff can meet that standing threshold, it can then pursue relief from the appropriate defendant (i.e. 'the person or entity ... which engaged in the violation,' 18 U.S.C. § 2520(a)) for a violation of any of the subsections of Chapter 119 of Title 18 of the U.S.Code." *DIRECTV, Inc. v. Gatsiolis,* 2003 WL 22111097, *2 (N.D.Ill. 2003). Because I find this reading of the statute to be the most plausible, I will deny the defendant's motion to dismiss.

I further note that even if "that violation" refers to the interception, disclosure or intentional use-as Tasche urges and as some courts have found-DirecTV would still have standing by virtue of § 2520. I reach this conclusion for two reasons. First, most of the courts that have adopted the construction urged by Tasche have relied heavily on the Fourth Circuit's decision in *Flowers v. Tandy Corp.,* 773 F.2d 585 (4th Cir.1985), and I find the *Flowers* case to be materially distinguishable from the facts at issue here. In *Flowers,* the plaintiff's husband illegally recorded her telephone conversations with a man with whom she was having an affair after she filed for a divorce. The husband recorded the conversations using a device he had purchased from a Radio Shack store owned and operated by Tandy, and used the information he obtained to file a counterclaim in the divorce action charging the plaintiff with adultery. The plaintiff and her boyfriend filed suit against her husband and Tandy, asserting claims under 18 U.S.C. § 2520, as well as for invasion of privacy and infliction of emotional distress. With respect to Tandy, the plaintiff claimed that it had violated § 2512 by selling her husband a device primarily designed for surreptitiously intercepting oral communications. The jury found in favor of the plaintiff, and Tandy appealed. The Fourth Circuit held that the private cause of action created by § 2520 did not reach the conduct Tandy engaged in and reversed. In so ruling, the *Flowers* court held that § 2520 "creates a cause of action against any person who 'intercepts, discloses, or uses, or procures any other person to intercept, disclose or use' a wire or oral communication in violation of Chapter 119 of Title 18." 773 F.2d at 589–90. Because it was undisputed that Tandy had only sold the device and had no knowledge of the husband's scheme to unlawfully intercept his wife's private conversations, the court concluded that § 2520 did not apply. *Id.* at 591.

The facts alleged here, however, differ significantly from those before the court in *Flowers.* DirecTV has alleged that Tasche was engaged in a scheme "to assist, aid and abet the illegal and unauthorized reception and decryption of DirecTV's satellite transmissions of television programming by persons not authorized to receive such programming." (Complt. ¶ 23(a).) Tasche, according to the complaint, was

"engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that the design of such devices renders them primarily useful for the purpose of surreptitious interception of DirecTV's satellite transmissions of television programming." (*Id.* ¶ 55.) Thus, unlike Tandy in *Flowers,* Tasche, at least according to the allegations in the complaint, sold devices specifically designed to steal DirecTV's satellite transmissions, knowing that they would be used to steal those transmissions. If this is true, then even though Tasche may not himself have intercepted the transmissions, he was clearly involved in the interception of them. In my view, that is sufficient to render him liable.

A second reason I would find standing (even if "that violation" referred to interception, disclosure or use of a communication) is the broad language employed by the statute. Though Tasche may not have actually done the intercepting himself, it would be a stretch to find that he was not "engaged in" that act. Those who sell devices that are designed to steal DirecTV's satellite transmissions to those who are intent on stealing DirecTV's satellite transmissions are, in my view, "engaged in" intercepting such transmissions. Because the complaint alleges DirecTV's transmissions were intercepted by Tasche's customers and that Tasche knew and, in fact, intended that his customers would intercept DirecTV's transmissions, I conclude that it states a valid claim under § 2512. Tasche's motion to dismiss DirecTV's sixth claim will therefore also be denied.

In summary, I follow those courts that read § 2520 as granting standing to those whose communications have been intercepted, used or disclosed and allowing a civil suit for any violation of Chapter 119

of Title 18. And, even if § 2520's term "that violation" refers to the more narrow act of intercepting, disclosing or using a communication, I find that the complaint sufficiently alleges that the defendant "engaged in that violation" when he knowingly sold satellite pirating devices to others with the intent that they be used for the interception of satellite signals.

Accordingly, for the reasons given above, **IT IS ORDERED** that the defendant's motion to dismiss Claims II and VI of the Complaint is **DENIED.**