**DIRECTV, INC., a California corporation, Plaintiffs,**

v.

**Tim FERGUSON, Kevin Hinz, Shawn W. Meyer, Tom Nastovski, Marc Obregon, David A. Ross, Les Smith, Cynthia C. Stockrahm, Robert A. Welch, Jr., Roger N. Westfall, and John Does 1 through 10, Defendants.**

No. 1:03CV164.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 23, 2004.

Gurjit S. Pandher PHV, Seattle, WA, Michael A. Wilkins, Indianapolis, IN, for Plaintiffs.

Paul B. Overhauser, Greenfield, IN, Kevin M. Boyle, Bloomington, IN, for Defendants, Hinz, Smith, Stockrahm.

Samuel L. Bolinger, Fort Wayne, IN, for Defendant, Robert A. Welch, Jr.

No counsel for Tim Ferguson, Shawn W. Meyer, Roger N. Westfall.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Plaintiff, DIRECTV, Inc. ('DIRECTV") brought this action against Defendants Kevin Hinz ("Hinz"), Les Smith ("Smith"), Cynthia Stockrahm ("Stockrahm"), or collectively ("Defendants") and others for claims arising out of their alleged trafficking of various devices enabling their customers to pirate DIRECTV's satellite television signal. Defendants Hinz, Smith, and Stockrahm have each admitted that they purchased the devices at issue, and resold those same devices to others. These Defendants assert that they are entitled to summary judgment based on their assertion that they never personally intercepted DIRECTV's signal. They also claim that they are entitled to summary judgment based on the fact that the pirate access devices they sold were not exclusively designed for pirating of satellite signals. Defendants also make three purely legal arguments for dismissal with regard to certain federal claims. First, Defendants assert that DIRECTV has no standing to sue under 17 U.S.C. § 1201(a)(2), because it is not a "person injured" under 17 U.S.C. § 1203(a). Second, Defendants assert that DIRECTV has no standing under 47 U.S.C. § 605(e)(4), because this provision does not apply to direct-to-home satellite services, but only to satellite cable programming. Third, Defendants assert that there is no private cause of action under 18 U.S.C. § 2512. Finally, Defendants raise a series of challenges to DIRECTV's state law claims.

Before beginning the analysis of the pending motions for summary judgment now before this Court, there are a few other pending motions that need to be addressed. On or about March 8, 2004, DIRECTV filed a motion to strike portions of the affidavits of Hinz, Smith and Stockrahm. The affidavits submitted by the

Defendants appear to be based upon their personal knowledge of the relevant facts as known to them. DIRECTV has presented its own evidence to attempt to refute such statements. Therefore, this Court sees no reason to strike portions of the Defendants' affidavits. Therefore DIRECTV's motion to strike (Doc. # 66) is **DENIED**.

On or about April 22, 2004, the Defendants filed their own motion to strike. Specifically, the Defendants objected to the opinions contained in the declarations and reports of Michael Barr, Larry Rissler, and Lacey Walker, DIRECTV's designated experts. The Defendants argue that the experts designated by DIRECTV are not qualified to testify as such. However, in reading the affidavits of Barr, Rissler, and Walker, this Court cannot agree. This Court will allow the testimony in the affidavits to remain to the extent that such testimony is relevant and substantiated and in accord with Rule 702 of the Federal Rules of Evidence. The Defendants' motion (Doc. # 80) is therefore **DENIED**.

It should also be noted that the stipulation and order of dismissal regarding Defendant Tom Nastovski (Doc. # 85) is no longer pending due to the Order issued on or about May 17, 2004 (Doc. # 88). Likewise, the motion to stay filed by Defendant Robert Welch Jr. (Doc. # 91) is no longer pending due to the Order issued on or about May 25, 2004 (Doc. # 92) granting such motion to stay.

## I. Background

DIRECTV is the nation's leading direct broadcast satellite system. *See* Declaration of Larry Rissler ("Rissler Decl."), ¶ 2. DIRECTV delivers hundreds of channels of satellite television programming to more than 12 million subscribing households nationwide. *Id.* DIRECTV's satellite television signal is encrypted—electronically scrambled—to prevent unauthorized reception. In order to receive and view

DIRECTV signals, a person needs certain hardware, including a DIRECTV satellite dish, a DIRECTV receiver (also known as an integrated receiver/decoder or IRD), and a DIRECTV Access Card. *Id.* at ¶ 3; *see* Declaration of Michael Barr, dated March 8, 2004 ("Barr Decl.") at ¶ 2. Paying customers of DIRECTV obtain this equipment, and the connecting cables and cords, at highly subsidized prices or for free. Rissler Decl. at ¶ 3.

The DIRECTV Access Card, which contains information unique to that card, is a credit-card shaped device containing a small microprocessor chip that is inserted into a DIRECTV receiver. *Id.* Every DIRECTV Access Card contains a reprogrammable microprocessor developed exclusively for the DIRECTV satellite system. *Id.* at ¶ 4. The Access Card enables the subscriber's IRD to decrypt DIRECTV's satellite signals and permit program viewing in accordance with the subscriber's authorized subscription package and pay-perview purchases. *See id.;* Barr Decl. at ¶ 3. The Access Card uses "smart card" technology (1) to control which DIRECTV programming a subscriber receives based upon the programming specifically purchased by the subscriber, and (2) to capture and transmit to DIRECTV's broadcast centers the subscriber's pay-per-view purchases. Rissler Decl. at ¶ 4.

As such, the Access Card is a key component in DIRECTV's security and accounting system. Rissler Decl. at ¶ 4. DIRECTV sells its programming in subscription packages. *Id.* at ¶ 5. By choosing a subscription package, a customer agrees to pay a monthly subscription fee, and DIRECTV authorizes the customer's DIRECTV Access Card to decrypt DIRECTV's satellite transmissions to allow the channels in the requested subscription package to be viewed by the customer.

*Id.* In addition, customers have the option of ordering pay-per-view programming, for which DIRECTV charges an additional per-program fee. *Id.; see* Barr Decl. at ¶ 4.

### Defendant Hinz

Defendant Hinz previously operated a computer business which sold programmers. (Hinz Dep. p. L). The programmers Defendant purchased were ISO 7816 programmers. (Hinz Dep. p. L). Defendant Hinz claims that none of the smart card programmers he sold were designed to intercept DIRECTV signals. In fact, Hinz claims smart card programmers are incapable of decrypting DIRECTV signals. (Hinz Aff. ¶ 11).

Although Hinz does not specifically know how the customers used the programmers, he asserts that programmers are generally used for programming smart cards. He further asserts that ISO 7816 programmers are standard devices used widely by the public for many typical computer uses and that smart cards are used in many general ways such as for data storage applications, security devices, identification devices, communication devices, and other devices. (Hinz Deposition p. L). Based on the above, Hinz argues that he has no liability to DIRECTV. Hinz asserts he only operated an electronics supply business, in which he purchased programmers as part of his general inventory, sold them as any other business would, and that the devices he sold were nothing more than generic items used for many purposes other than interception.

### Defendant Smith

Defendant Smith previously operated a business which sold various electronic components, and as part of his business, he sold many innocuous components such as copper wire, resistors, capacitors and programmers. (Smith Dep. p. 14 L7–17). The programmers Smith purchased were ISO 7816 programmers from White Viper.

(Smith Dep. p. 16 L17–19). Smith claims he never programmed nor used the programmers. (Smith Dep. p. 17 L1–5; p. 34 L1—5). Smith further claims he sold all of the programmers he purchased. (Smith Dep. p. 31 L15 –17).

Like Hinz, Defendant Smith does not specifically know how the customers used the programmers, and claims programmers are generally used for programming smart cards. Smith also claims that smart cards are used in many general ways such as for data storage applications, security devices, identification devices, communication devices, and other devices. (Smith Deposition p. 49 L17—24).

Defendant Smith alleges that he only operated an electronics supply business, in which he purchased programmers as part of his general inventory, sold them as any other business would, and that the devices sold were nothing more than generic items used for many purposes other than interception.

### Defendant Stockrahm

Defendant Stockrahm previously operated a small website called alittlebit-ofeverything.com which sold a few computer items. (Stockrahm Dep. p. 27 L11—p.28 L15). Stockrahm claims she never used or programmed any of the items. Storckrahm claims she only operated a website that attempted to sell a few computer items.

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.,* 164 F.3d 373 (7th Cir. 1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.,* 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505.

## III. Discussion

### Federal Law Claims

Defendants argue that they are entitled to summary judgment on DIRECTV's claims under 47 U.S.C. § 605(a) (Claim 1), 17 U.S.C. § 1201(a)(2) (Claim 3), and 18 U.S.C. § 2511(1)(a) (Claim 5), what they refer to as "Interception" claims, based on the disputed assertion that they never, personally, intercepted DIRECTV's satellite signal. DIRECTV claims however, that this argument fails for two reasons: First, the Defendants' interception of DIRECTV's signal is not required in order to establish claims under these statutes for the sale, distribution, or other trafficking of pirate access devices. Second, even if such evidence were required, DIRECTV has provided substantial circumstantial evidence of such conduct on the part of the Defendants.

### Claim 1

■ 47 U.S.C. § 605(a), which is the basis of DIRECTV's First Claim, prohibits any unauthorized persons from "receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate foreign communication by wire or radio" and then "divulging or publishing" that material except through authorized channels." Although Section 605 does not contain any language directly or explicitly relating to the distribution of intercept equipment, courts have had little difficulty determining that it covers equipment distributors, including distributors of subscription television decoders, through recourse to the statutory language: "assist in receiving." *United States v. Beale,* 681 F.Supp. 74, 76 (D.Maine 1988)(citing *ON/TV of Chicago v. Julien,* 763 F.2d 839, 843–44 (7th Cir. 1985)("...sale of a decoder obviously 'assist[s] in receiving any interstate or for-

eign communication by radio and [the] use [of] such communication...for the benefit of another not entitled thereto...' as prohibited by § 605..."); *National Subscription Television v. S & H TV*, 644 F.2d 820, 826–27 (9th Cir.1981); *Chartwell Comm. Group v. Westbrook*, 637 F.2d 459, 466 (6th Cir.1980); *Cox Cable Cleveland Area, Inc. v. King*, 582 F.Supp. 376, 379 (N.D.Ohio 1983)).

Further, courts have expressly found that in the context of a case involving the distribution of decoder devices, there is no need to prove actual interception or reception of a communication. *Beale*, 681 F.Supp. at 76; *see also ON/TV of Chicago*, 763 F.2d at 843–44 (court held that the defendant's intent "to violate section 605 by actively encouraging the unauthorized interception of...signals" did not need to be established in a civil case.).

It appears from the sparse case law, specific to the language in Section 605 as it pertains to "assist(s) in receiving," that whether the sole purpose of the decoder sold by a person is to intercept privileged communications is a question of fact to be resolved at trial. As was held in the Seventh Circuit's decision of *ON/TV*, since sale of a decoder obviously "assist(s) in receiving interstate or foreign communication ... for the benefit of another no entitled thereto ..." as prohibited by the plain language of Section 605, DIRECTV does not need to show that Defendants intended to violate Section 605 by actively encouraging the unauthorized interception of their signals.[1]

However, this is not to say that DIRECTV does not have a steep hill to climb in regards to their allegations, it is simply to say that such is not a matter for sum-mary judgment purposes. It cannot be said that in light most favorable to DIRECTV that a genuine issue of material fact does not exist as it relates to the specific language of Section 605 in regards to "assist(s) in receiving."

*Claim 3*

■ The basis of DIRECTV's third claim is 17 U.S.C. § 1201(a)(2) which states in relevant part:

2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(2). The Court must look to the clear language of the statute and in observing the plain language of Section 1201(a)(2), as argued by DIRECTV, the plain language is devoid of any assertion that interception is required. It should also be noted that Defendants have failed to offer any proof, other than the bald assertion that interception is not

---

1. It should also be noted that the fact that Defendant Hinz as well as Defendant Stockrahm had subscriptions to DIRECTV services, and therefore all of the necessary equipment for pirating, is another indication that a mate-rial issue of fact exists and therefore summary judgment should be precluded. *See DirecTV v. Karpinsky*, 274 F.Supp.2d 918 (E.D.Mich. 2003), *on reconsideration of* 269 F.Supp.2d 918 (E.D.Mich.2003).

required, to the contrary. As for the Defendants' argument that DIRECTV has no standing to sue under Section 1201(a)(2) because it is not a "person injured" under 17 U.S.C. § 1203(a), as discussed issues of fact remain as to the purpose behind the devices admittedly sold by the Defendants as well as the issue of interception itself. Thus, summary judgment cannot be granted as to DIRECTV's claim 3.

*Claim 5*

■ The basis of DIRECTV's fifth claim arises under 18 U.S.C. § 2511(1)(a) which provides penalties for "any person who (a) intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . ." Contrary to the Defendants' contentions, which again are unsupported by any relevant case law, and in strict adherence to this Court's duty to construe the statute according to its plain language, proof of actual, personal interception does not appear to be required.

The issue of the Defendants' liability under 47 U.S.C. § 605(a) (Count 1), 17 U.S.C. § 1201(a)(2) (Count 3), and 18 U.S.C. § 2511(1)(a) (Count 5) must be decided by the trier of fact in this instance.

*Claim 2*

■ DIRECTV's second claim arises out of an alleged violation by the Defendants of 47 U.S.C. § 605(e)(4). Defendants allege that DIRECTV is not entitled to assert a private cause of action under this section because it is only available to businesses providing "satellite cable programming" and not those like DIRECTV that merely provide "direct-to-home satellite services." Consequently, this Court must look to the plain language of the statute in determining who has standing to bring civil claims for violations of that section. Section 605(e)(3)(A) states: "Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction." But in order to bring such an action, the plaintiff must be a "person aggrieved." The phrase "person aggrieved" is specifically defined by the statute. Section 605(d)(6) states:

> the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and in the case of a violation of paragraph (4) of subsection (e) of this section shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

Defendants' argument is two-fold. First, Defendants assert that DIRECTV does not have standing to seek civil remedies for violations of Section 605(e)(4) because it is not an "aggrieved person." Secondly, Defendants focus on the definition of "satellite cable programming," which the statute defines as programming "primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers." 47 U.S.C. § 605(d)(1). The Defendants argue that DIRECTV sends programming directly to the consumer rather than to cable operators who subsequently re-transmit it to their subscribers.

The Defendants offer no genuine policy reason why the literal terms of the statute should be ignored and the more narrow construction be applied. As stated in *DirecTV v. Tasche*, 2004 WL 1040911 (E.D.Wis. May 4, 2004), "It makes little sense for Congress to authorize civil lawsuits by direct satellite broadcasters against persons who steal their programming, but deny standing for them to bring

similar lawsuits against those involved in the manufacture and distribution of the illegal devices that make possible the theft in the first place." "Indeed, such a construction would be contrary to clear legislative history relating to the 1988 amendment to the Federal Communications Act which added the § 605(d)(6) definition of 'any person aggrieved.'" *Id.* The House Report accompanying the 1988 amendment states explicitly that the amendment was intended to deter piracy practices by "expanding standing to sue . . . ." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 912 (6th Cir.2001) (citing H.R.Rep. No. 100–877(II), at 28, reprinted in 1988 U.S.C.C.A.N. 5638, 5657).

Again while there may be proper uses for the devices sold by Defendants, such issue is not properly before this Court for purposes of summary judgment. Based upon the language of the statute as well as the history behind such, it is the opinion of this Court that Congress intended to confer standing on providers of direct-to-home satellite programming to bring civil actions for violations of § 605(e)(4). Thus, such direct-to-home satellite services like DIRECTV, would also encompass Congress' use of that same term in Section 605(d)(6) defining an "aggrieved person."

*Claim 4*

The Defendants argue that DIRECTV's claim brought under 17 U.S.C. § 1201(b)(1), claim 4, must fail because it requires trafficking in devices primarily designed to intercept, but DIRECTV admits that the devices sold by Defendants are generic in purpose. The Defendants claim that because these devices were not designed to intercept DIRECTV's signals that claim 4 cannot stand. This is the exact argument made in regards to DIRECTV's second claim discussed above. As stated, the statutes at issue do not require DIRECTV to prove that the devices purchased and redistributed by the Defendants were designed solely to pirate DIRECTV's signals. Section 1201(b)(1) only requires that DIRECTV prove that the device in issue is primarily designed or produced for the purpose of circumventing . . ." Whether the sole purpose of the decoder sold by a person is to intercept privileged communications is a question of fact to be resolved at trial. *See, ON/TV of Chicago,* 763 F.2d at 843–44. Furthermore, DIRECTV has offered expert testimony in regards to the devices' primary or sole uses such that a genuine issue of material fact exists.

*Claim 6*

The Defendants argue that DIRECTV is not entitled to assert a private cause of action under 18 U.S.C. § 2512(1)(b) because mere possession is not actionable by DIRECTV. Section 2512(1)(b), like 47 U.S.C. § 605(e)(4), also provides for criminal liability if a person intentionally "manufactures, assembles, possesses, or sells any . . . device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications . . ." Also like 47 U.S.C. § 605(e)(4), § 2512 is a criminal statute. But by virtue of § 2520, DIRECTV argues, it has standing to bring a civil action for a violation of § 2512. Section 2520(a) provides that "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . engaged in that violation". Under DIRECTV's theory, § 2520 allows for civil liability for any violations of that chapter.

In the Defendants' view, this language limits the persons against whom DIRECTV can bring a civil action to only those who directly intercept, disclose, or

intentionally use its wire, oral or electronic communication. However, DIRECTV argues that the Defendants have engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices in violation of § 2512(1)(b). The Defendants argue that such is not enough, because making, possessing or selling such devices, by itself, does not amount to intercepting.

While a majority of Courts have held that actions based on violations of § 2512(1)(b) fall outside of the scope of § 2520(a) it appears the facts of this case are distinguishable. Most of the Courts that have adopted the construction urged by the Defendants have relied heavily on the Fourth Circuit's decision in *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir.1985). However, the facts of this case are, at least to some extent, a different animal in comparison to the myriad of DIRECTV cases out there. The allegations in this matter rely on the assertion that the Defendants participated in the sale and/or distribution of these devices rather than mere possession and personal use. This Court credits the view taken by the *Tasche* Court in illustrating how the *Flowers* case can be materially distinguishable from the facts at issue here.

In *Flowers*, it was undisputed that [Tandy] had only sold the device and had no knowledge of the husband's scheme to unlawfully intercept his wife's private conversations thus, the court concluded that § 2520 did not apply. *Id.* at 591. However in this matter, DIRECTV alleges that the Defendants were engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that the design of such devices render them primarily useful for the surreptitious interception of DIRECTV's satellite programming in violation of 2512(1)(b).

Thus, unlike Tandy in *Flowers,* the Defendants in this matter, at least according to the allegations in the Complaint, sold devices specifically designed to steal DIRECTV's satellite transmissions, knowing that they would be used to steal those transmissions. If this is true, then even though the Defendants themselves may not have intercepted the transmissions, they were clearly involved in such interception. Furthermore, even though the Defendants may not have actually done the intercepting themselves, it would seem a stretch to find that they were not "engaged in" that act by the sale of such devices. In this Court's view, the Complaint sufficiently alleges that the Defendant "engaged in that violation" when they allegedly, knowingly sold satellite pirating devices to others with the intent that they be used for the interception of satellite signals, rendering the issue inappropriate for purposes of summary judgment. *See, Tasche,* 2004 WL 1040911 (E.D.Wis. May 4, 2004), *see also, Directv v. Perez,* 279 F.Supp.2d 962 (N.D.Ill.2003),

*Claim 7*

 Unjust enrichment occurs when "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind.1991). Defendants assert that this claim should be dismissed on summary judgment based on the contention that they "never intercepted," and "never received any benefit." However, because evidence of a genuine issue of material fact exists as to the interception issue of DIRECTV's Complaint, such has been deemed inappropriate for summary judgment purposes.

*Claim 8*

 Proof of five elements is necessary to recover for tortious interference

with a contract, (i) existence of a valid and enforceable contract; (ii) defendant's knowledge of the existence of the contract; (iii) defendant's intentional inducement of breach of the contract; (iv) the absence of justification; and (v) damages resulting from defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind.1994). In determining whether a defendant's conduct in intentionally interfering with a contract is justified, Indiana courts consider the following factors:

(a) the nature of the defendant's conduct;

(b) the defendant's motive;

(c) the interests of the plaintiff with which the defendant's conduct interferes;

(d) the interests sought to be advanced by the defendant;

(e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

(f) the proximity or remoteness of the defendant's conduct to the interference; and

(g) the relations between the parties.

*Id.* (citing *Restatement (Second) of Torts* § 767 (1977)).

Defendants assert that DIRECTV's claim for tortious interference with contract should be dismissed based on the assertion that Defendants "never 'induced' anyone to 'breach' a 'contract' with DIRECTV." However, the evidence demonstrates and the Defendants sold devices allegedly used in the pirating of DIRECTV programming. If true, these devices would have allowed the Defendants' customers, in violation of their DIRECTV subscription agreements, to obtain DIRECTV programming without paying DIRECTV. With all of these issues still outstanding this Court cannot dismiss DIRECTV's claim of tortious interference although as illustrated by the above-mentioned applicable standard, will not be a complaisant undertaking.

*Claim 9*

 Defendants contend that tortious interference with prospective contractual relations is not a tort recognized under Indiana law. They rely on *Lutheran Hospital of Fort Wayne, Inc. v. Doe*, 639 N.E.2d 687 (Ind.App.1994). The plaintiff in *Lutheran Hospital* brought a claim for "intentional interference with a contract"—not tortious interference with a future contract. *Id.* at 693. To prove "intentional interference with a contract," the existence of a valid and enforceable contract is necessary. *Id.* Because the plaintiff's argument was "premised on prospective contractual relationships in which no valid and enforceable contract had been entered, her cause of action for intentional interference with a contract" could not be maintained. *Id.*

DIRECTV argues that unlike the *Lutheran Hospital* plaintiff, it brought claims for both tortious interference with a contract and tortious interference with prospective contractual relations. "Indiana has long recognized that an action will lie for an unjustifiable interference with the contractual and prospectively advantageous business relationship one enjoys with another." *Martin v. Platt*, 179 Ind. App. 688, 690, 386 N.E.2d 1026, 1027 (1979); *See also, Brazauskas v. Fort Wayne–South Bend Diocese, Inc.*, 796 N.E.2d 286, 289 (Ind.2003). Again, because it has been found that a genuine issue of material fact is in existence, summary judgment is not appropriate on this issue.

*Claim 10*

 Defendants argue that DIRECTV's claim for unfair competition should be dismissed based on the assertion that they "never competed with DIRECTV for anything, or sold devices that competed

with DIRECTV." Unfair competition has been described as " 'any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods of one person as and for that of another.' " *Felsher v. University of Evansville,* 755 N.E.2d 589, 598 (Ind.2001) (quoting *Hartzler v. Goshen Churn & Ladder Co.,* 55 Ind.App. 455, 464, 104 N.E. 34, 37 (1914)). The Defendants are alleged to have sold pirate access devices designed primarily or solely for the purpose of unlawfully decrypting DIRECTV's programming signal. Because evidence of such does exist and it has been determined that a genuine issue of material fact is present, DIRECTV's claim of unfair competition cannot be properly disposed of via summary judgment.

*Claim 11*

█ Defendants lastly contend that Indiana Code Section 35–43–5–6.5 only applies to devices for transmission by a cable television system and that DIRECT is merely a direct-to-home satellite service provider. This statute provides:

A person who manufactures, distributes, sells, leases, or offers for sale or lease:
(1) a device; or
(2) a kit of parts to construct a device; designed in whole or in part to intercept, unscramble, or decode a transmission by a cable television system with the intent that the device or kit be used to obtain cable television services without full payment to the cable television system commits a class D felony.

I.C. § 35–43–5–6.5. Without any precedent or specific language under the statute, this Court is unwilling to infer that the purpose of this statute was only to include a transmission by a cable television system, specifically excluding direct-to-home

satellite service like DIRECTV. It would seem the purpose behind such a statute would be a broad one, to protect the integrity of any encoded television transmission, regardless of whether it relies partially on the medium of cable. This Court sees no reason, nor do the Defendants offer any evidence other than their assertion that it is not a cable television system, as to why DIRECTV should not be afforded the same protection as that of cable television systems.

## IV. Conclusion

Based on the foregoing, and the reasons cited herein, the Defendants', Kevin Hinz, Les Smith and Cynthia Stockrahm, motions for summary judgment must be **DE-NIED.**[2]

**IT IS SO ORDERED.**

---

2. DIRECTV's motion with regard to the motion for summary judgment by Defendant

Hinz (Doc. # 67) is therefore rendered **MOOT.**